IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA G.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:23-cv-00940-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Joshua G. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND[2]

Born in February 1985, plaintiff alleges disability beginning September 5, 2018,[3] due to depression, anxiety, panic disorder with agoraphobia, insomnia, post-traumatic stress disorder, migraines, and a nasal bone spur. Tr. 367, 406. His application was denied initially and upon reconsideration. On February 8 and June 16, 2022, hearings were held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a medical expert ("ME") – i.e., Andrew Brown, M.D. – and a vocational expert ("VE"). Tr. 37-104. On July 20, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 14-28. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "headaches and migraines; right shoulder dysfunction/labral tear; anxiety; depression; and posttraumatic stress disorder." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff

---

[2] The record before the Court is nearly 1000 pages, but with some incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

[3] Plaintiff originally alleged disability as of September 1, 2007, but later amended his onset date to correspond to the medical record. Tr. 14, 42-43, 401. As a result, plaintiff became ineligible for Title II Disability Insurance Benefits and accordingly withdrew that claim. Tr. 14-15, 42-43.

Page 2 – OPINION AND ORDER

had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except:

> [He] can occasionally climb ramps/stairs, but should never climb ladders, ropes, or scaffolds. [He] can frequently balance, stoop, kneel, and crouch, but should never crawl. [Plaintiff] is limited to only occasional right overhead reaching. [He] should avoid exposure to loud noises and to significant vibrations, such as in the operation of a jack hammer, and should avoid exposure to hazards such as dangerous machinery and unprotected heights. [Plaintiff] should have only occasional exposure to temperature extremes such as extreme cold and extreme heat and should have only occasional exposure to wetness and humidity. [Plaintiff] is limited to simple routine, repetitive tasks with only occasional interaction with the public, coworkers, and supervisors.

Tr. 20-21.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 26. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as garment sorter, collator operator, and inspector/hand packager. Tr. 26-27.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting his subjective symptom statements; (2) improperly assessing the medical opinion of treating family nurse practitioner Laura Foerst; and (3) failing to find him presumptively disabled at step three under Listings 11.02 and 12.06.[4]

---

[4] Plaintiff characterizes his arguments as one overarching issue in relation to SSR 96-8p, which governs the formulation of the RFC. *See* Pl.'s Opening Br. 8-12 (doc. 10) ("[t]he ALJ failed to properly assess the decisional RFC pursuant to SSR 96-8p resulting in fatal Steps Three and Five errors" in regard to plaintiff's "migraines [and] mental impairments"). However, plaintiffs' RFC argument is premised predominantly on wrongfully rejected medical evidence or subjective symptom testimony. Indeed, plaintiff's untimely reply brief acknowledges as much. *See* Pl.'s Reply Br. 3 (doc. 14) ("because the ALJ did not follow the proper legal standards [in evaluating plaintiff's subjective complaints], a reviewing court cannot know whether the RFC is based on all of [plaintiff's] limitations"). This contingent argument is therefore more appropriately addressed in the context of determining the harmfulness of the error and proper legal remedy.

Page 3 – OPINION AND ORDER

I.        **Plaintiff's Testimony**

Plaintiff contends the ALJ erred by discrediting his testimony concerning the extent of his mental impairments and migraines. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the February 2022 hearing, the ALJ inquired about three topics: plaintiff's activities (specifically, schooling and travel), why he had transferred care from his longstanding provider (Ms. Foerst), and whether he had obtained right shoulder surgery. Plaintiff testified that he had participated in some college courses during the adjudication period but explained that when he started his "problems . . . were not nearly as severe" and his mental health "very rapidly" became an issue. Tr. 85-85.

When asked about two references in the record to travel – a 2018 trip to Norway and 2020 trip to Hawaii – plaintiff reported that the latter did not happen. Tr. 87-89. Regarding the former, plaintiff indicated he was in Norway for two or three weeks with his long-term girlfriend but "it was very difficult . . . I had to seek extra layers of medication from my psych just to even be able to make it there." Tr. 88-89.

Concerning Ms. Foerst, the ALJ asked whether she referred plaintiff to a different provider because "she was having disagreements on what you wanted her to prescribe?" Tr. 90, 92. Plaintiff clarified that "was never the case" – instead, Ms. Foerst was retiring and "let us know a few months in advance [because] it might take them some time to find somebody to replace her." Tr. 90-91.

Plaintiff indicated he had not yet had right shoulder surgery due to initially being misdiagnosed and his mental impairments. Tr. 99-104. He reported he was in "a lot of pain" and had met with two orthopedic surgeons but had not yet decided on a surgeon. Tr. 93-94, 99-100. Plaintiff acknowledged "the surgery is very important" but he did not like either surgeon he met with and, in any event, "it's just . . . much easier for me to focus on just one, single thing." Tr. 100, 103. The ALJ determined "a good evaluation of the shoulder" was needed in order to proceed with the case, so elected to schedule a second hearing with a ME. Tr. 102-104.

At the June 2022 hearing, plaintiff testified that he was unable to work due to his mental health symptoms – in particular, his inability to leave his room. Tr. 54, 56. He explained that he limits his interactions to his girlfriend and medical providers: "I don't even go out to get my own mail a couple of houses down from ours . . . there's no leaving the house unless I have a doctors' appointments." Tr. 56-57. Plaintiff also expressed difficulty with frequent migraines and sleeping – noting he got headaches "close to every other day" and his sleep schedule was "very erratic," sometimes getting as little as two and as many as nine hours of sleep each night. Tr. 58, 62.

As far as treatment, plaintiff testified that his impairments prevented him from "establishing therapeutic care [in] a one-on-one environment . . . I just can't get myself out and into those facilities" on a regular, predictable basis. Tr. 57-58. He further indicated taking medications for migraines, sleep, and anxiety "helped" but did not totally ameliorate his symptoms. Tr. 65.

The ALJ again questioned plaintiff about the references in the record to school and travel, stating: "you have left your house in the past . . . I don't think [your girlfriend] would've planned a trip to Hawaii if she didn't think you could leave the house . . . the trips and your plans to return to school [reflect] that you had plans to leave the house, or actually did leave the house in the case of Norway." Tr. 60-61. Plaintiff responded: "[The record] doesn't say that my girlfriend knew that I could leave the house, and she didn't think that I could leave the house [to go to Hawaii] . . . she really had hopes [but] I knew that that was likely not [going] to be able to happen [and] it didn't." Tr. 60-61. The ALJ also queried why plaintiff did not have bed sores or muscle atrophy if "you're in bed 24 hours a day in a dark room?" Tr. 63. Plaintiff expressed that he had a diagnosed Vitamin D deficiency due to the lack of light and also made "[c]omplaints about discomfort" to his medical providers. Tr. 63-64.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21-22. In particular, the ALJ cited plaintiff's daily activities, "poor adherence to treatment," and the lack of objective findings indicative of additional limitations. Tr. 22-24.

Notably, the ALJ found that "the severity of [mental health and migraine] symptoms testified to" was "inconsistent with [plaintiff's] level of activity." Tr. 22-24. In support of this finding, the ALJ relied on plaintiff's "trip to Norway" at the "beginning of the adjudicatory period" and scheduled trip to Hawaii in 2020, and ability to "rid[e] a bicycle" and attend "a group that was getting him out of the house more" and classes at OHSU in 2019, "one of which was apparently in person." *Id.* Although the ALJ recognized that plaintiff had stopped classes by 2020, "this was primarily due to financial reasons." Tr. 23.

"Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (superseded by statute on other grounds). Here, however, the ALJ's reasoning is not supported by substantial evidence.

Initially, the fact that plaintiff attempted to attend school part-time, but was ultimately unsuccessful, does not impugn his credibility. See *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (superseded by regulation on other grounds) ("[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability"); *see also Reddick v.*

Page 7 – OPINION AND ORDER

*Chater,* 157 F.3d 715, 722 (9th Cir. 1998) ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). The record reflects that plaintiff was attending Linn-Benton Community College in 2018 before his studies became too impacted by his anxiety. Tr. 509, 661, 670. He was then able to attend one in-person college class and one on-line college class during the fall of 2019, when his symptoms appeared to be improving due to the introduction of Vitamin D supplements.[5] Tr. 685-690, 880-81. But these improvements were not sustained. *See, e.g.*, Tr. 668-74, 698, 961-64, 968; *see also Benton v. Comm'r of Soc. Sec. Admin.*, 2022 WL 2071980, *4 (D. Ariz. June 9, 2022) ("[a]s the Ninth Circuit has previously discussed, the presence of waxing and waning of symptoms during the treatment period do not necessarily indicate an ability to maintain employment"); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (occasional signs of improvement do not undermine consistent impairments in the overall record).

Moreover, it is undisputed plaintiff did not continue school past December 2019. While plaintiff did cite to financial reasons for not continuing school during the Winter 2020 term, he also indicated that his mental health symptoms were a barrier to his ability to successfully complete classes. *See* Tr. 692 (Ms. Foerst observing plaintiff to be depressed, irritable, and anxious, with a "slumped" posture, when he commented in March 2020 that "[h]e decided not to go to school this quarter – financial concerns mainly"), 696 (plaintiff remarking in June 2020 that "[h]e is trying to

---

[5] The sole chart note surrounding group activities occurred within this period. *See* Tr. 687 (plaintiff "mention[ing] [in September 2019] that he is attending a group at Seit Am synagogue so is getting out of the house more for that"). Likewise, there is a single reference in the record, in the context of plaintiff's January 2020 psychological evaluation with Douglas Smyth, Ph.D., to plaintiff riding a bike. *See* Tr. 671 (in the "Activities of Daily Living Section," Dr. Smyth noted: "[Plaintiff] stated he has a driver's license though denied owning a vehicle. He said he usually relies on [his girlfriend] for rides. He endorsed the ability to ride a bicycle"). These isolated references do "not constitute substantial evidence." *Ellefson v. Colvin*, 2016 WL 3769359, *4 n.3 (D. Or. July 14, 2016); *see also Reddick*, 157 F.3d at 722-23 (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding).

Page 8 – OPINION AND ORDER

finish college but has not found a way to mitigate the anxiety and depression he feels aside from medications – though he has had the most luck with clonazepam – antidepressants never effective for him"). As such, this portion of the record is entirely consistent with plaintiff's hearing testimony.

Further, it is anathema to logic to penalize plaintiff for a Hawaii trip that he neither planned nor ultimately participated in. And, as discussed herein, plaintiff's mental health impairments appeared to worsen throughout the adjudication period. Therefore, the ALJ's reliance on a trip to Norway that plaintiff took in October 2018, shortly after the alleged onset date, is insufficient to discredit the entirety of his testimony. Tr. 630; *cf. Cowie v. Comm'r of Soc. Sec.*, 2017 WL 5894190, *4-5 (D. Or. Nov. 29, 2017) (reversing the ALJ's decision where the ALJ "exclusively relied on inconsistencies in the record that coincided with" the earlier part of the adjudication period," even though the record overall showed a worsening of symptoms). Thus, activities such as plaintiff's – i.e., occasionally attending necessary medical appointments, engaging in an unsuccessful attempt to resume school, and travelling and engaging in other limited activities outside the home within months of the alleged onset date – are neither transferable to a work setting nor contradict claims of a totally debilitating impairment.

Concerning plaintiff's treatment history, the ALJ denoted "the extent of symptoms alleged are also entirely inconsistent with poor adherence to treatment and most objective findings during this time indicating largely normal functioning." Tr. 23. The evidence overwhelmingly demonstrates that plaintiff's ability to seek appropriate care and follow through with his providers' treatment recommendations was severely impacted by his psychological symptoms. *See, e.g.*, Tr. 504, 696, 699, 704, 775, 782, 789, 919, 964. And it is well established that an ALJ must consider a claimant's reasons for not seeking treatment. *See* SSR 16-3p, *available at* 2017 WL 5180304

(ALJ may not find an "individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons [they] may not comply with treatment or seek treatment consistent with the degree of [their] complaints"); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. ) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (citation and internal quotations omitted). In the present case, the ALJ's finding is especially problematic given that: (1) the ALJ mischaracterized the record insofar as plaintiff often presented as depressed or anxious; and (2) "observations of cognitive functioning during therapy sessions" – e.g., "good eye contact, organized and logical thought content, and focused attention" – "do not contradict [the claimant's] reported symptoms of depression and social anxiety." Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014); Tr. 596, 669, 671, 673, 678, 682-83, 692, 745.

Finally, the ALJ found that, "if [plaintiff's] symptoms were so severe that [he] was spending most or all of his day in bed, one would expect to see" objective indicators – e.g., "muscle atrophy, bed sores, or other signs consistent with such limitation," which were absent. Tr. 23. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). In other words, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ's other reasons are not supported by substantial evidence.

In any event, the ALJ once again mischaracterized the record in recounting the objective medical evidence. For instance, plaintiff's Vitamin D deficiency is well documented within the

Page 10 – OPINION AND ORDER

record, a condition that is commonly associated in adults with inadequate sun exposure. Tr. 707, 739, 768, 775, 782, 789, 796, 803, 810, 817, 823, 913; *see, e.g.*, *Turner v. Ahern*, 2013 WL 2950835, *1-4 (N.D. Cal. June 14, 2013). In sum, the ALJ neglected to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony. The ALJ's decision is reversed as to this issue.

## II.    Medical Opinion Evidence

Plaintiff next asserts the ALJ improperly discredited the opinion of Ms. Foerst.[6] Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[7] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to

---

[6] Plaintiff appears to additionally challenge the ALJ's treatment of Dr. Smyth's assessment. *See* Pl.'s Opening Br. 19-20 (doc. 10) ("Dr. Smyth's CE detailed limitations and signs that were consistent with other signs and symptoms throughout the record that the ALJ failed to discuss"). However, as the ALJ correctly observed, Dr. Smyth proffered diagnoses but did not otherwise rate the severity of plaintiff's functioning or detail any work-related limitations. Tr. 25, 668-74; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity").

[7] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

In February 2018, Ms. Foerst became plaintiff's primary care provider, which included tracking and managing his mental health symptoms, as well as his medications. Tr. 614-17, 964. In July 2019, Ms. Foerst completed a "Mental Residual Functional Capacity Assessment" at the request of plaintiff's counsel, in which she endorsed "severe" or "moderately severe"[8] limitations in plaintiff's ability to: remember locations and work-like procedures, understand and remember or carry out very short and simple instructions, understand and remember or carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday or workweek without interruptions from psychologically based symptoms, interact with the general public or co-workers, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. Tr. 961-64.

The accompanying narrative portion of Ms. Foerst's report stated:

---

[8] This form defined "moderately severe as "[a] limitation which significantly interferes with the individual's ability to function in the designated area and precludes the individual's ability to perform the designated activity on a full-time and sustained basis. Individual would be 'off task' at work at least 15% of the time." Tr. 961. And "severe" is defined as "[a] severe limitation that precludes the individual's ability to function in the designated area. Individual would be 'off task' at work at least 20% of the time." *Id.*

Page 12 – OPINION AND ORDER

> [Plaintiff] reports increasing difficulty leaving home or even leaving his room over the last year. He feels like he can't go to school or work because of his disabling anxiety. He increasingly avoids interactions with anyone other than very familiar people. Medications have not been effective for him despite numerous trials over the last decade. Leaving the house to see a therapist is also too difficult for him to manage consistently.

Tr. 964.

The ALJ determined Ms. Foerst's opinion was "not persuasive." Tr. 25. Specifically, the ALJ resolved: "The level of severity suggested by this report is not consistent with the record as a whole, including both prior State agency psychological determinations or even the consultative psychological examination report [from Dr. Smyth], which advised that although [plaintiff's] presentation raised concern of psychotic decompensation, this was not seen in treatment notes available for review." *Id.* In addition, the ALJ noted that Dr. Smyth indicated plaintiff "had no problem making meals, could ride a bicycle, cared for a pet cat, did laundry, and showed no unusual persistence deficits, although pace was slow." *Id.*

An independent review of the record reveals that the ALJ's consideration of the supportability and consistency of Ms. Foerst's opinion, along with the additional sub-factors, is not supported by substantial evidence. As a preliminary matter, there is no apparent contradiction between Dr. Smyth's and Ms. Foerst's reports. Based on a review of medical records, clinical interview, and mental status exam, Dr. Smyth diagnosed plaintiff with "Agoraphobia with Panic Attacks," "Social Anxiety Disorder," "Unspecified Depressive Disorder," and "Posttraumatic Stress Disorder, provisional diagnosis." Tr. 673-74. He also listed "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder" and "Insomnia Disorder" as rule out diagnoses. *Id.* Although he did not articulate any functional limitations, his independent observations and medical assessment are generally consistent with Ms. Foerst's chart notes documenting significant anxiety. *Compare* Tr. 668-74, *with* Tr. 614-31, 880-910.

Page 13 – OPINION AND ORDER

Furthermore, conflict with a medical opinion alone is not a sufficient reason to reject it. *Cf. Simmons v. Astrue*, 2012 WL 414000, *6 (D. Ariz. Feb. 9, 2021) ("[t]he relevant inquiry is not whether substantial evidence conflicts with a medical opinion, but instead whether the ALJ's decision to adopt [or reject an] opinion is supported by substantial evidence"); *see also Denise W. v. Saul*, 2019 WL 5618081, *5 (D. Or. Oct. 31, 2019) (expressly rejecting the Commissioner's contention that, under the prior regulations, state agency consulting source findings and opinions were "alone a valid basis to discount" a treating doctor's opinion). Stated differently, the only medical records relating to plaintiff's mental health are from Ms. Foerst, Dr. Smyth, and the state agency consulting sources – essentially, the ALJ disregarded the opinion of every source who generated independent evidence by treating or examining plaintiff. Lastly, as discussed in Section I, the fact that plaintiff may have engaged in certain activities within the confines of his home (as documented by Dr. Smyth) is not a valid basis to discredit Ms. Foerst's opinion that plaintiff had problems functioning outside his home.

The ALJ committed reversible error in regard to the opinion of Ms. Foerst. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

## III. Step Three

Lastly, plaintiff contends the ALJ erred by not finding him presumptively disabled by his migraines or mental impairments under Listings 11.02 and 12.06, respectively. At step three, the ALJ assesses whether the claimant has an impairment or combination of medically determinable, severe impairments that meets or equals a listing. *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). The claimant bears the burden of demonstrating that "all of the specified criteria [are met]."

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Further, a determination of medical equivalence must rest on objective medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); SSR 17-2p, *available at* 2017 WL 3928306. In particular, "[m]edical equivalence must be based on medical findings" and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citation and internal quotations omitted).

### A.  Migraines

Headache disorders are evaluated under Listing 11.02, the listing for epilepsy, under "paragraph B or D." SSR 19-4p, *available* at 2019 WL 4169635. To equal Listing 11.02B, a claimant must have headache events "at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." *Id.*  To determine whether a claimant's symptoms are "equal in severity and duration to the criteria in 11.02B," the ALJ must consider:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*

To equal Listing 11.02D, a claimant must have headache events "at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." *Id.* To determine whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, the ALJ evaluates "the same factors [they]

Page 15 – OPINION AND ORDER

consider for 11.02B and [they] also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id.*

The record demonstrates that plaintiff complained to providers about headaches/migraines and engaged in various forms of treatment, including medications and injections. *See, e.g.*, Tr. 752-879. When asked to rate the severity of his pain, he generally endorsed a range between 5 and 8 (10 being the worst pain imaginable), but also indicated that he obtained 60%-to-70% relief from treatment. *See generally id.*

The only medical opinions of record addressing this impairment – i.e., the state agency consulting sources and ME Brown – found that the medical record did not establish presumptive disability at step three. Tr. 110-11, 146-47; *see also* Tr. 48-49 (ME Brown testifying that plaintiff does not meet or equal Listing 11.02; although the record documents "frequent headaches" with variable severity, it does "not indicate how the headache interferes with function [and] his anxiety appears to come into play, and therefore, it would be reasonable to assume that his anxiety and other psychiatric diagnoses have a role in the intensity of his headache").

The ALJ explicitly relied on this evidence in evaluating plaintiff's migraines pursuant to Listing 11.02 to find that plaintiff was not presumptively disabled, and plaintiff has not come forth with any contrary evidence outside of his subjective symptom statements. Tr. 18-19. However, as denoted above, plaintiff's subjective reports are insufficient to establish equivalency at step three, especially to the extent they do not document the requisite signs and signals. SSR 19-4p, *available at* 2019 WL 4169635; *Tackett*, 180 F.3d at 1100; *see also Mariah J. v. Kijakazi*, 2023 WL 5827681, *4 (D. Or. Sept. 8, 2023) (self-reports to medical providers "do not conclusively show

that [his] headaches meet the criteria of Listing 11.02"). As such, the ALJ did not commit reversible error in this regard.

### B.     Mental Impairments

Anxiety and obsessive-compulsive disorders are assessed pursuant to Listing 12.06 and hinge, in relevant part, on whether the "paragraph B" criteria are met. "To satisfy the 'paragraph B' criteria, the mental impairments must result in one extreme limitation or two marked limitations in any of four areas of functioning" – i.e., understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06; 20 C.F.R. § 416.920a(a)(3). An extreme limitation is "incompatible with the ability to do any gainful activity." 20 C.F.R. § 416.920a(a)(4). "A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." Tr. 19.

At step three, the ALJ considered Listing 12.06 and found that plaintiff had: no limitation in understanding, remembering, or applying information, and adapting or managing oneself; and moderate limitation in interacting with others and concentration, persistence, or pace. Tr. 19-20. In making these findings, the ALJ cited to plaintiff's ability to cook, ride a bike, attend college ("quitting his pursuit of education due mostly to financial reasons"), travel to Norway, attend group meetings, and interact "appropriately with providers," as well as his routine examination findings. *Id.* The ALJ also relied on the state agency consulting source opinions. Tr. 20.

As addressed in Section I, the reasons cited by the ALJ are either taken out of context, immaterial in regard to mental impairments, or not borne out by the record. And as discussed in Section II, the ALJ erred in evaluating the medical opinion of Ms. Foerst, which suggests that

Page 17 – OPINION AND ORDER

plaintiff had marked or extreme limitations in most of the four areas of functioning. The ALJ, in turn, erred by repeating these mistakes in evaluating Listing 12.06.

IV.     **Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly evaluate step three, along with evidence from plaintiff and Ms. Foerst. Further proceedings would nonetheless be useful regarding the extent of plaintiff's allegedly disabling mental impairments, such that remanding for the immediate payment of benefits (either under a listing or otherwise) is improper. *Cf. Mariah J.*, 2023 WL 5827681 at *4 ("[a]n ALJ erring at step three does not necessarily mean that Plaintiff meets a listing or that the Court must award benefits—the Court must still engage in the credit-as-true analysis").

On one hand, it is undisputed that plaintiff's anxiety and agoraphobia are longstanding and have persisted at significant levels despite the introduction of numerous prescription medications.

On the other hand, plaintiff refused certain mental health medications and has not obtained counseling (even remotely), despite Ms. Foerst and other providers indicating this was a necessary modality of treatment. *See, e.g.*, Tr. 680-82, 684-85.

Moreover, there is some indication that plaintiff may have been more functional at the beginning of the adjudication period despite ongoing symptoms. *Compare* Tr. 643-44, 647 (plaintiff reporting a shoulder injury after climbing at the rock gym in October 2018 and belaying a heavier partner), *with* Tr. 677 (plaintiff reporting to Ms. Foerst in May 2019 that he "is distressed by how agoraphobic he has become – very disabled by this – cannot progress in school or even leave the house"). Finally, Ms. Foerst ceased treating plaintiff in mid-2021, such that there is no opinion evidence surrounding plaintiff's recent symptoms and the overall cyclical nature of his impairments. Accordingly, the record is ambiguous concerning if/when plaintiff's mental impairments became disabling.

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the ambiguity surrounding any potential disability onset date, coupled with the complex and longstanding nature of plaintiff's mental health conditions, the use of a ME specializing in psychology would be helpful. Therefore, upon remand, the ALJ must consult a ME to review the entire record and opine as to plaintiff's functional abilities during the adjudication period and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 20th day of March, 2024.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge